UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANAND HAZARE,

               Petitioner,

    - against -

STEVEN RACETTE,

               Respondent.
--------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CV-6117 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Petitioner *pro se*, Anand Hazare, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his March 31, 2010 conviction in the New York Supreme Court, Queens County for first-degree assault, second-degree manslaughter, second-degree assault, second-degree vehicular assault, leaving the scene of an incident, and driving under the influence of alcohol. (Habeas Pet. (Doc. No. 1) at 1.)[1] For the reasons that follow, Hazare's habeas petition is DISMISSED.

      Hazare filed a petition for a writ of habeas corpus, which was received by the Court on October 17, 2014. Hazare argues that: (1) the prosecution failed to prove beyond a reasonable doubt at trial that he was in immediate flight from a crime; (2) he was deprived of a fair trial because of an improper jury charge; (3) he was denied due process by a pre-indictment delay of 884 days; and (4) he was denied the right to effective representation based on counsel's failure to raise a claim of pre-indictment delay. (Habeas Pet. at 1–23.) Respondent submitted opposition papers on June 5, 2015. (Resp.'s Aff. in Opp'n (Doc. No. 12).) On July 20, 2015 and December 7, 2015, respectively, Hazare filed motions with this Court to amend his habeas petition and stay the proceedings so that he could exhaust additional claims in state court. (Mot. to Am. and Stay

---

[1] For ease of reference, citations to pages in court documents utilize ECF pagination.

(Doc. No. 14); Mot. to Stay (Doc. No. 20).)  The Court issued a Memorandum and Order dated March 31, 2016 detailing the procedural posture of the case and denying Hazare's motions to amend the petition and stay the proceedings.  (3/31/16 Order (Doc. No. 21).)  Accordingly, the Court assumes the parties' familiarity with the procedural posture of this action.

## BACKGROUND

Hazare's conviction arose out of two car crashes that occurred on October 16, 2005. After an evening of drinking, Hazare got behind the wheel of a car and hit pedestrian Wazir Mohammed, seriously injuring him (the "First Collision").  (Resp.'s Aff. in Opp'n ¶¶ 5, 8, 31.) Instead of stopping, Hazare reversed and drove back over Mohammed's body, and then drove away.  (*Id.* ¶ 8.)  Hazare stopped briefly at his friend Vernon Ramjattam's house before getting back in the car.  (*Id.* ¶ 29.)  Hazare then hit an SUV with four occupants, causing the rear door of the SUV to break open, ejecting twenty-one-year-old Shiva Patraju, who later died as a result of his injuries (the "Second Collision").  (*Id.* ¶¶ 11, 33.)  Hazare left the scene of the Second Collision and returned to Ramjattam's house without contacting the police.  (*Id.* ¶¶ 12, 29.)

## I.    The Trial

Following hearings and jury selection, Hazare's trial began on March 8, 2010.  The prosecution presented 15 witnesses, including five police officers and detectives with various roles in the police investigation, an Assistant District Attorney, three medical providers, a forensic pathologist, one eye-witness, the three surviving occupants of the SUV from the Second Collision, and Shiva's father, Enric Patraju.[2]  The defense called one witness – Hazare's employer, Susan Robichaud.  On March 16, 2010, the jury unanimously convicted Hazare of first-degree assault, second-degree manslaughter, second-degree assault, second-degree vehicular

---

[2] Testimony of Shiva's father, Enric Patraju, is not included herein because it does not address matters relevant to Hazare's petition.

assault, leaving the scene of an incident without reporting, and driving under the influence of alcohol.[3]  (3/16/10 Trial Tr. Part II (Doc. No. 11-10) at 24–25.)

### a.  **Eyewitness Leana Maharaj**

Leana Maharaj testified that, on the night of October 16, 2005 she was living two houses away from the Liberty and Lefferts intersection where Hazare hit Mohammad.  (3/8/10 Trial Tr. (Doc. No. 11-6) at 37–38.)  Maharaj testified that, around 2:50 AM, she heard a "screech or something gettin', like a thud. . . . There was someone lying underneath the car.  And someone just . . . backed up again over that person and sped away."  (*Id.* at 39–40.)  Maharaj testified that she did not see the driver of the car communicate in any way with anyone at that intersection, and that the driver did not stop to talk to anyone.  (*Id.* at 42.)  Maharaj then called 911.  (*Id.* at 43.)

### b.  **Police Officers and Detectives**

The government called five law enforcement witnesses, Joseph Vincent, Patrick Rooney, Robert Ferrari, Colleen Schutt, and Mathew Peters, who testified about their observations and investigations at the crime scene and police precincts following the collisions.[4]

### i.  **Officer Vincent**

Officer Vincent, a police officer in the 106th Precinct in Queens, was on a uniformed patrol assignment on October 16, 2005, the night of the collisions.  (3/8/10 Trial Tr. at 54–55.)  At approximately 2:51 AM, Officer Vincent and his partner, Officer Rinaldi, responded to a call from a police dispatcher and reported to the intersection of Liberty and Lefferts Boulevard in

---

[3] Prior to opening statements, the government moved to dismiss three first-degree reckless endangerment counts, as well as a count for falsely reporting an incident.  (3/8/10 Trial Tr. (Doc. No. 11-6) at 18–19.)  The government also moved during the trial to dismiss a second-degree vehicular assault charge.  (3/15/10 Trial Tr. (Doc. No. 11-9) at 63.)  The jury found Hazare not guilty of second-degree murder.  (3/16/10 Trial Tr. at 24.)

[4] The bulk of the relevant information is encompassed in the testimony of Officer Vincent and Detective Rooney. Portions of the testimony of Detectives Ferrari and Schutt and Officer Peters are included in subsections (i) and (ii) below to supplement Officer Vincent and Detective Rooney's testimony.

Richmond Hills.  (*Id.* at 56–57.)  Officers Vincent and Rinaldi were the first officers on the scene

of the First Collision.  (*Id.* at 58.)  Officer Vincent testified that he and his partner were told by

witnesses at the scene that "a car had hit a pedestrian who was crossing the street and that [the

car] had left the location."  (*Id.* at 57.)  One of the witnesses had a partial license plate number

for the vehicle.  (*Id.* at 60.)  Using a computer from the police car, Officer Vincent identified a

1997 Mistubishi two-door sedan registered to Susan Robichaud that matched the information

provided by the witnesses.  (*Id.* at 60–61.)  After speaking to more witnesses, Officer Vincent

noted in the accident report that there were two people in the car that struck the pedestrian.  (*Id.*

at 73.)

At 2:55 AM, less than five minutes after receiving the call regarding the First Collision at

Liberty and Lefferts, a Sergeant called Officers Vincent and Rinaldi requesting their assistance at

the scene of the Second Collision at 124th Street and Linden Avenue.  (*Id.* at 62, 68.)  Officer

Vincent testified that to travel the nine to ten blocks separating the sites of the two collisions

took "[a]pproximately two minutes," and that police personnel were already at the second scene

when he arrived.  (*Id.* at 62–64.)  He observed a dark colored Chevy Suburban as well as a

purplish grey Mitsubishi two-door sedan.  (*Id.* at 62.)  The Mitsubishi's license plate matched the

1997 Mitsubishi registered to Ms. Robichaud.  (*Id.*)

ii.    **Detective Rooney**

That same night, Detective Patrick Rooney, a member of the highway district accident

investigation squad, was assigned to investigate the scene of the Second Collision.  (3/9/10 Trial

Tr. (Doc. No. 11-7) at 26, 30–31.)  By the time he arrived at the scene, the passengers from the

SUV had been transported to the Jamaica Hospital.[5]  (*Id.* at 31–32.)  There were, however,

---

[5] Oscar Bermudez, an emergency medical technician working for Jamaica Medical Center, testified that he transported Shiva from the scene of the Second Collision at around 3:08 AM.  (3/8/10 Trial Tr. at 87.)

officers from the 106th precinct, as well as officers from highway patrol Unit 3 still present.  (*Id.* at 32.)  Detective Rooney testified that all the traffic lights at the intersection worked and that neither vehicle applied brakes before contact, suggesting that the crash "happened real quick." (*Id.* at 33–34.)  Detective Rooney further stated that "124th Street is an unposted 30-mile an hour zone."  (*Id.* at 34.)

As part of his investigation, Detective Rooney went to Jamaica Hospital to interview the passengers from the SUV.  (*Id.* at 36.)  Detective Rooney, together with Sergeant Doug Willis, the highway patrol supervisor, interviewed Shastri Soogrim, the driver of the SUV, at the hospital.[6]  (*Id.* at 37–38.)  Detective Rooney then returned to the scene of the Second Collision where he found a knapsack in the Mitsubishi containing Hazare's photo identification.  (*Id.* at 40–41.)  Detective Rooney also took a blood sample from the driver's side air bag as well as what appeared to be hair from the outside portion of the driver's side windshield.  (*Id.* at 91–92.) After recovering the evidence, Detective Rooney returned briefly to Jamaica Hospital.  (*Id.* at 45.)  Upon leaving the hospital, Detective Rooney received a phone call from Sergeant Willis informing him of a carjacking near the scene of the Second Collision.  (3/9/10 Trial Tr. at 45.)

By the time Detective Rooney arrived at the carjacking scene, police officers Attari and Peters, as well as Sergeant Willis, were already present.[7]  (*Id.* at 47.)  Detective Rooney heard Hazare telling Officer Peters that two black males stole his car at knifepoint.  (3/9/10 Trial Tr. at 49; *see also* 3/10/10 Trial Tr. at 92–93.)  Rooney observed that Hazare's clothing was bloodied

---

[6] At 4:46 AM, Sergeant Willis administered a portable breath test to determine whether Soogrim had any alcohol in his system.  (3/9/10 Trial Tr. at 38–39.)  The results indicated zero alcohol in Soogrim's system.  (*Id.* at 39.)

[7] Officer Peters testified that he received a 911 call at approximately 5:32 AM on October 16, 2005, and went to the described location.  (3/10/10 Trial Tr. (Doc. No. 11-8) at 90–91.)  Officer Peters further testified that, when he arrived at the location, he saw Hazare and noticed that Hazare smelled of alcohol, had bloodshot, watery eyes, and was swaying.  (*Id.* at 93.)  He also noticed that Hazare appeared nervous and "panicky," was disheveled, and had blood on his shirt.  (*Id.* at 93–94.)

and that he had a strong odor of alcohol on his breath, had bloodshot eyes, and was swaying. (3/9/10 Trial Tr. at 40–50.)  Rooney arrested Hazare and read him his Miranda rights.[8]  (3/9/10 Trial Tr. at 50.)  Officers Attari and Peters transported Hazare to the 112th precinct where Detective Robert Ferrari tested Hazare's blood alcohol content at 7:57 AM.  (3/9/10 Trial Tr. at 55–56.)  Detective Ferrari testified that the exam showed that Hazare had a blood alcohol concentration of 0.122 percent.[9]  (3/10/10 Trial Tr. at 55.)

Beginning around 8:15 AM, Rooney asked Hazare questions and filled out a questionnaire regarding the evening's events based on Hazare's responses.  (3/9/10 Trial Tr. at 58–61.)  Hazare answered, in part, that he had been driving the car, had four Scotch drinks, and had last drank alcohol at 1:00 AM.  (*Id.* at 58–59.)  Hazare was then transported to the 106th precinct where, around 11:30 AM, Rooney read Hazare his Miranda rights again and had Hazare provide a narrative account of the collisions.  (*Id.* at 66–68, 73–76, 126–27.)  Hazare stated that after having four or five Scotches, he hit a pedestrian at the intersection of Liberty and Lefferts. (*Id.* at 74.)  After hitting the pedestrian, Hazare "got spooked" and stopped briefly at his friend Vernon Ramjattam's house.  (*Id.*)  Deciding that he had to go home, Hazare drove away and ran a red light, hitting an SUV.  (*Id.* at 75.)  From there, he walked back to his friend Vernon's home. (*Id.*)  "Frightened and confused," Hazare called 911 and reported a carjacking.  (*Id.*)  Hazare continued that he did not think he was going more than 50 miles an hour because he "did not want to draw attention to [himself], [and he] was aware of what [he] was doing."  (*Id.*)

---

[8] At a September 25, 2008 hearing, Detective Rooney indicated that Hazare was originally arrested for driving while intoxicated after Sergeant Willis administered a portable breath test at the scene and Hazare blew a .149.  (9/25/08 Hr'g Tr. (Doc. No. 11-3) at 19, 23.)

[9] Detective Colleen Schutt, a member of the forensic investigations division of the NYPD, testified to the adequacy of the breathalyzer machines.  (3/10/10 Trial Tr. at 81–83.)

Hazare was again interviewed at the 106th precinct in the presence of Rooney and two Assistant District Attorneys from the Queens District Attorney's Office.  (*Id.* at 78.)  Rooney asked Hazare to write down his accounts of the collisions.  (*Id.* at 79.)  The following is an excerpt from Hazare's written confession:

> I was alone in my car.  As I turned onto Lefferts I saw a guy . . . crossing from my right between two cars.  I thought he would have seen me and stopped, but I kept going.  The car collided with him.
>
> Frightened and confused I went to where my friend was staying on . . . 127th Street.  It's not my car it's my boss's car, I didn't know what to do.  I told my friend that I was going back to Jersey.  I left, went up 127th Street, turned right onto Linden Boulevard.  I was scared and confused, preoccupied with thoughts, of how I was going to explain to my boss, and then I collided with an SUV, going across my path that was headed toward Liberty Avenue.  They told me that I had ran a . . . red light.  I could not have been doing more than 50 miles an hour.
>
> I was preoccupied [with] what to tell my boss, but I was aware of my speed, I didn't want to attract attention by speeding.

(*Id.* at 80–83.)  With Rooney observing, Assistant District Attorneys Travis Hunter and Charissa Ilardi filmed and interviewed Hazare at 12:58 PM.[10]  (*Id.* at 139; 3/10/10 Trial Tr. at 101.)

### c.  **Shastri Soogrim – SUV Driver**

On the night of the crash, Shastri Soogrim was the driver of the SUV involved in the Second Collision.  (3/8/10 Trial Tr. at 110–19.)  At around 2:15 or 2:30 AM, Soogrim received a call from his friend Shiva to pick up him, Avina Ramnarine, and two sisters, Varuna Zahabir and Narmada Zahabir, from the Rum Jungle nightclub.  (*Id.* at 109–11.)  Soogrim and his friend Avikash Ramnarine then went to the club to pick up their friends.  (*Id.* at 111.)  On the way home, after dropping off the two sisters, Soogrim testified that he stopped at the red light at the intersection of Linden Boulevard and 124th Street.  (*Id.* at 113, 116–17.)  After waiting for the light to turn green, Soogrim testified to traveling between 15 and 20 miles an hour through the

---

[10] Assistant District Attorney Ilardi testified that she observed a very strong odor of alcohol in the interview room with Hazare.  (3/10/10 Trial Tr. at 102.)

intersection. (*Id.* at 118.) Out of the corner of his eye, Soogrim saw headlights approaching the intersection at a speed he estimated to be between 60 and 70 miles an hour. (*Id.*) Avikash, the front seat passenger at the time, also testified that he saw the car approaching, but did not have time to alert Soogrim. (3/9/10 Trial Tr. Part II (Doc. No. 11-8) at 8.) Unable to avoid the collision, the oncoming car smashed into the SUV, causing the SUV to spin. After a few seconds, the SUV stopped spinning and was facing the opposite direction. (3/8/10 Trial Tr. at 119–20.)

After the crash, Soogrim checked to make sure Avikash, Avina and Shiva were okay. (*Id.* at 120–21.) Shiva was not in the car and Soogrim got out of the vehicle. (*Id.* at 121.) He noticed that Shiva was lying in front of the SUV, unresponsive with his face down on the sidewalk. (*Id.* at 122.) Avina testified that her brother, Avikash, then called the police. (3/11/10 Trial Tr. Part I (Doc. No. 11-8) at 141.) Soogrim testified that he saw the driver of the other car in the middle of Linden Boulevard on his cell phone. (3/8/10 Trial Tr. at 123.) Soogrim and Avikash began yelling at the driver, asking him whether he was drunk. (*Id.*) The driver then walked away and Soogrim and Avikash eventually lost sight of him. (*Id.* at 123–25.) Shiva and Avina went to Jamaica Hospital in an ambulance and Avikash's parents transported Soogrim and Avikash. (*Id.* at 126–27.) Shiva did not survive the crash. (3/8/10 Trial Tr. Part II (Doc. No. 11-7) at 2.)

d. **Doctor William Closson**

Forensic toxicologist William Closson testified that at the time of the two crashes Hazare's blood alcohol concentration was between 0.19 and 0.22 percent – a level comparable to Hazare having consumed approximately eleven alcoholic beverages. (3/10/10 Trial Tr. at 116.)

e. **Doctor Kenneth Fretwell**

Dr. Kenneth Fretwell, the chairman of surgery at Jamaica Hospital, oversaw the treatment of Wazir Mohammed ("Mohammed"), the injured pedestrian from the First Collision. (3/10/10 Trial Tr. at 35, 38–39.) Dr. Fretwell testified that, upon examination, Mohammed suffered from several vertebral fractures; two rib fractures; a scapular fracture; and a non-displaced fracture of the fibula and right arm bone. (*Id.* at 42–43.) Dr. Fretwell reported that Mohammed was hospitalized in the intensive care unit for five days, remained in the hospital for approximately six more days before being discharged, and still suffered pain two years later. (*Id.* at 44–45.)

### f. **Doctor Corinne Ambrosi**

Dr. Corinne Ambrosi, Deputy Chief Medical Examiner for the New York City Medical Examiner's Office, testified as an expert in forensic pathology.[11] (3/11/10 Trial Tr. Part II (Doc. No. 11-9) at 10–12.) Ambrosi testified that the autopsy performed on October 17, 2005 revealed that Shiva died as a result of blunt impact injuries to his head and torso. (*Id.* at 16.)

### g. **Susan Robichaud**

Susan Robichaud, Hazare's employer and owner of the car Hazare was driving at the time of the collisions, testified for the defense. (3/15/10 Trial Tr. (Doc. No. 11-9) at 50–51.) She testified that she had employed Hazare for four years preceding the evening of the crashes. (*Id.* at 51.) She also explained that she let Hazare use the Mitsubishi for personal use. (*Id.*)

## II. **Assault in the First Degree Jury Charge**

Judge Lasak informed the jurors that, in order for the jury to find Hazare guilty beyond a reasonable doubt of the crime of first-degree assault, the government was required to prove the following two elements:

---

[11] While she did not conduct Shiva's autopsy, part of her role as deputy chief is to testify in situations where the medical examiner who performed the autopsy has left the office. (3/11/10 Trial Tr. Part II at 11, 13.)

> (1) That on or about October 16, 2005, here in Queens County the defendant committed the crime of leaving the scene of an incident without reporting; and
>
> (2) That in the course of and in furtherance of the commission of the crime of leaving the scene of an incident without reporting or of immediate flight therefrom the defendant caused serious physical injury to Shivanand Patraju and that Shivanand Patraju was not a participant in the felony.

(3/16/10 Trial Tr. Part II at 1.)

In determining whether Hazare was in immediate flight from the commission of the crime of leaving the scene of an incident without reporting, Judge Lasak informed the jurors that they may consider:

> (1) The distance, if any, between the location of the crime of leaving the scene of an incident without reporting and the location where serious physical injury was caused;
>
> (2) The interval of time, if any, between the commission or attempted commission of the crime of leaving the scene of an incident without reporting and the causing of serious physical injury; and,
>
> (3) Whether such person had reached the place of temporary safety before the serious physical injury was caused.

(3/16/10 Trial Tr. Part I (Doc. No. 11-9) at 130.)

The jury returned a verdict of guilty on all counts with the exception of second-degree murder. (3/16/10 Trial Tr. Part II at 24–25.)

## DISCUSSION

### I.  Standard of Review

#### a.  <u>General Standard of Review of Habeas Petitions</u>

Consistent with the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, §§ 2253, 2254, 110 Stat. 1214 (1996), federal courts may grant a state prisoner's petition for habeas corpus on claims "adjudicated on the merits" in state court only where the adjudication of each claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. § 2254(d). Conversely, claims that have not been adjudicated on the merits are subject to *de novo* review. *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001). A state court's factual findings are presumed to be correct and may be overturned only if a petitioner offers "clear and convincing evidence" that the findings were in error. 28 U.S.C. § 2254(e)(1). Where a state court's decision rests on a procedural bar constituting an adequate state-law ground independent of the federal question, federal courts will not review the question of federal law on a habeas petition as it is considered procedurally barred, unless the prisoner demonstrates cause for failing to comply with the state procedural rule and prejudice resulting from the procedural bar. *Joseph v. Racette*, No. 12-CV-1693 (NGG), 2014 WL 1426255, at *4, *4 n.4 (E.D.N.Y. Apr. 14, 2014).

A state court adjudicates a petitioner's federal constitutional claims "on the merits" when "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to a judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). The "state court need not mention the argument raised or cite relevant case law in order for its ruling to constitute an adjudication on the merits." *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002) (internal quotation marks and citation omitted). "[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12. Stated simply, under § 2254(d)(1), this Court is confined to the question of "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

b.  Standard of Review for Mixed Petitions

A basic requirement for pursuing a habeas petition in federal court is the exhaustion of the petitioner's state remedies.  *See Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citing 28 U.S.C. § 2254(b)(1)(A)).  A "mixed" petition is one in which the petitioner has presented some claims that have been exhausted in state court and others that remain unexhausted.  *Rhines*, 544 U.S. at 271–72.  The instant petition is a mixed petition as Hazare asserts both exhausted and unexhausted claims.  In such circumstances, a court may:  (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits; (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims.  *See Rhines*, 544 U.S. at 273–74, 278; *Schouenborg v. Superintendent, Auburn Corr. Facility*, No. 08-CV-2865 (JS), 2013 WL 5502832, at *5 (E.D.N.Y. Sept. 30, 2013).  Here the Court denies the entire petition on the merits.

**II.  The Exhausted Claims in the Habeas Petition Must Be Dismissed.**

Hazare asserts three properly exhausted claims in his habeas petition.  First, he claims that the evidence produced at trial was insufficient to convict him of first-degree assault ("Sufficiency Claim").  (Habeas Pet. at 2.)  Second, Hazare argues that the trial court improperly instructed the jury regarding the factors to consider in assessing immediate flight ("Jury Instruction Claim").  (*Id.* at 9.)  Finally, in the "Supporting Facts" section relating to Hazare's unexhausted claim that his right to effective assistance of counsel was violated because of his counsel's failure to address pre-indictment delay, Hazare states, "[t]his is the same defense counsel, [who] for no apparant [sic] tactical reason, failed to alert the Court as to the incomplete charge of first-degree assault to the jury."  (*Id.* at 16–17.)  Because this description suggests

Hazare may wish to raise an ineffective assistance of counsel claim with respect to counsel's failure to challenge at trial an allegedly improper jury instruction on immediate flight, the Court addresses both allegations – the exhausted claim of ineffective assistance of counsel based on an allegedly improper jury instruction ("Ineffective Assistance Jury Charge Claim"), and the unexhausted claim of ineffective assistance of counsel based on pre-indictment delay ("Ineffective Assistance Speedy Trial Claim").[12]  All three exhausted claims are meritless.

     a.  <u>There was Sufficient Evidence to Convict Hazare.</u>

Hazare argues that the evidence at trial was insufficient to convict him of first-degree assault because "the People failed to prove beyond a reasonable doubt that when [Hazare] got into the second accident, he was in the immediate flight from the crime of leaving the scene of the first incident, an element of the First-Degree Assault count."  (Habeas Pet. at 2.)  This claim is meritless.

A habeas petitioner who challenges the sufficiency of the evidence supporting his conviction bears a heavy burden.  Indeed, to obtain habeas relief based on insufficiency of the evidence, the court must find that, when viewing the evidence most favorably to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt.  *Farrington v. Senkowski*, 214 F.3d 237, 240–41 (2d Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).  The Court must defer to the jury's determination of the weight given to conflicting evidence, witness credibility, and inferences drawn from the evidence.  *Jackson*, 443 U.S. at 319.  This "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

---

[12] Hazare's Ineffective Assistance Speedy Trial Claim is unexhausted and addressed in Section III(b) below.

Applying these legal principles to the facts of this case, considering the evidence in the light most favorable to the prosecution, and deferring to the jury's assessment of the evidence at trial, Hazare has failed to show that his conviction rests on a determination that was contrary to federal law established by the Supreme Court.

A review of the record in the light most favorable to the prosecution readily establishes that a reasonable juror could have found Hazare guilty of first-degree assault. To prove that Hazare committed first-degree assault, the prosecution was required to prove that Hazare caused a serious physical injury while he was in the immediate flight from a felony – here, leaving the scene of an incident without reporting. *See* N.Y. Penal Law § 120.10(4).

The trial evidence established that Hazare caused Shiva's death in the immediate flight from a felony. By his own admission, Hazare fled the scene of the First Collision, stopped briefly at his friend's home, and then departed to drive back to New Jersey, without attempting to contact law enforcement. Further, the two collisions were separated by less than five minutes and were only eight to ten blocks apart. (Resp.'s Aff. in Opp'n ¶¶ 3, 14; *see also* 3/8/10 Trial Tr. at 67–68 (testimony that Officer Vincent received a call to respond to the First Collision at 2:51 AM and a call for assistance at the scene of the Second Collision at 2:55 AM); *id.* at 63 (testimony that the drive from the first to the second scene was 9–10 blocks).)

Hazare's claim that, because there was no police pursuit, the trial evidence was insufficient to prove that the Second Collision happened in the immediate flight from the First Collision is meritless. (*See* Habeas Pet. at 8.) Police pursuit is only one factor that a jury *may* consider in determining whether a defendant was in immediate flight, and no one factor is determinative. *See People v. Gladman*, 41 N.Y.2d 123, 129 (1976). As such, it is not a necessary component of the charge to the jury.

Hazare's further contention that he was not in immediate flight because he had reached a place of temporary safety is also rejected. *See People v. Slaughter*, 78 N.Y.2d 485, 491 (N.Y. 1991) (finding that a defendant had not reached a place of temporary safety when he was still driving in the getaway vehicle when he collided with a passenger vehicle, even though there had been a "brief interruption" in flight for the defendant to buy soda and cigarettes and drop off accomplices). The evidence was sufficient to sustain a finding that Hazare had not reached a place of temporary safety when he briefly stopped at his friend's home because "he was still in the immediate vicinity" of the crime. *See Black v. Ercole*, No. 06-CV-4982 (GBD), 2009 WL 2709384, at *14 (S.D.N.Y. Aug. 27, 2009) (finding that, because he was in the "immediate vicinity" of the crime, petitioner had not reached a place of temporary safety when he was found selling stolen wine a few blocks from the store from which he stole the wine).

In sum, drawing all reasonable inferences from the facts in the light most favorable to the prosecution, a rational juror could have found that Hazare was in immediate flight, had not reached a place of temporary safety, and was guilty beyond a reasonable doubt. As such, Hazare has not shown that his conviction was either an unreasonable application of, or contrary to, the standards espoused by the Supreme Court in *Jackson* and its progeny. Accordingly, Hazare's Sufficiency Claim is denied.

    b.  The Immediate Flight Jury Instruction Claim is Denied.

In his second claim, Hazare again addresses the "immediate flight" jury charge, arguing that, because the trial court's jury instructions with respect to whether Hazare was in "immediate flight" from a felony did not include an instruction to consider whether police were in close pursuit, the instruction was improper. (Habeas Pet. at 9–10.) Hazare's challenge to the trial court's charge is procedurally barred because the Appellate Division found it unpreserved for

appellate review as a result of Hazare's failure to comply with New York's preservation rule. *See Joseph*, 2014 WL 1426255, at *5 ("If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so* . . . then that claim is considered procedurally barred rather than unexhausted."). This state rule requires defense counsel to contemporaneously object to any alleged legal error at a criminal trial. *See* N.Y. Crim. Proc. Law § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.").

A federal habeas court will not consider a petitioner's claim if that claim was defaulted in state court on an adequate and independent state law ground, unless the petitioner shows good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); *Richardson v. Greene*, No. 05-CV-4805 (SAS), 2006 WL 2707334 (S.D.N.Y. Sept. 20, 2006) ("*Richardson I*") (stating same and applying test), *aff'd* 497 F.3d 212 (2d Cir. 2007) ("*Richardson II*").

     i.   *Adequate and Independent State Law Ground*

The Jury Instruction Claim is procedurally barred on an independent and adequate state-law ground. Here, the Appellate Division held that Hazare's contention that the trial court's

charge was incomplete on the "immediate flight" element of first-degree assault is "not preserved for appellate review (*see* C.P.L. § 470.05[5])." *People v. Hazare*, 105 A.D.3d 975 (2d Dep't 2013). This determination constitutes an "independent" ground of decision. *See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an independent state ground." (internal citation and quotation marks omitted)).

The question then is whether New York's preservation rule is "adequate" to prevent federal collateral review in this case. This question is governed by federal law. *Richardson II*, 497 F.3d at 217. A state preservation rule is adequate where it is "firmly established and regularly followed by the state," *id.* at 218 (quoting *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003), and where its application would not be "'exorbitant,' that is to say, an arid 'ritual . . . [that] would further no perceivable state interest.'" *Id.* (quoting *Lee v. Kemna*, 534 U.S. 362, 366 (2002)). Where – as here – the case law interpreting New York's preservation rule "displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine." *Richardson II*, 497 F.3d at 220; *see also Garvey*, 485 F.3d at 718 (Preservation required under § 470.05(2) is "a firmly established and regularly followed New York procedural rule."); *Engle v. Isaac*, 456 U.S. 107, 124–25 (1982) (failing to make a contemporaneous objection to jury instructions in compliance with state law constitutes a procedural default). Thus, New York's preservation rule constituted an adequate and independent state law ground for purposes of Hazare's federal habeas petition and Hazare's Jury Instruction Claim is procedurally barred.

ii.    *Cause and Prejudice*

Even when a habeas claim is procedurally defaulted, a federal court may consider the claim if the petitioner can demonstrate (i) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (ii) that failure to consider the claim alleged will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The only cause for the default here was Hazare's trial counsel's alleged failure to object. Counsel's inadvertence or ignorance is not considered "cause" for a default. *Id.* at 753, 755 ("[C]ounsel's ineffectiveness will constitute cause only if it is an independent constitutional violation."). However, failure to raise a claim due to ineffective assistance of counsel can constitute cause. *Id.* Here, Hazare alleges that his trial counsel was ineffective because of his failure to preserve this Jury Instruction Claim. (Habeas Pet. at 17; *see also* section II(c), *infra*.) For that reason, the Court evaluates whether Hazare's counsel's failure to challenge the jury instructions constitutes ineffective assistance of counsel.

Hazare raised an ineffective assistance of counsel claim on appeal. The Appellate Division denied the appeal, but did not explicitly address the ineffective assistance of counsel claim. Nevertheless, when a state court denies relief, it may be presumed that it has adjudicated the claim on the merits, absent an indication otherwise. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). By denying reversal of Hazare's conviction on appeal, including Hazare's ineffective assistance of counsel claim, the Appellate Division presumptively denied Hazare's claim. Hazare has not demonstrated that this decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Moreover, even assuming arguendo that the Appellate Court had not reached the merits of Hazare's ineffective assistance claim, as discussed in section II(c), *infra*, Hazare's ineffective assistance of counsel claim is meritless. Thus,

Hazare's counsel's failure to object to the jury charge does not provide a basis for finding cause to prevent the procedural default of Hazare's Jury Instruction Claim.

Moreover, even if Hazare had demonstrated cause, he has failed to demonstrate the requisite prejudice to overcome the procedural default. To warrant habeas relief, a jury instruction must not merely be "undesirable, erroneous, or even 'universally condemned,'" but it also must violate a guaranteed federal constitutional right. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). "The pertinent question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (quoting *Cupp*, 414 U.S. at 147). The alleged error in the jury instruction – leaving out a discretionary factor – does not come close to meeting this standard.

A court's charge is adequate if, taken as a whole, it alerts the jury as to the correct rules which should be applied in arriving at a decision. *People v. Drake*, 7 N.Y.3d 28, 34 (2006); *People v. Umali*, 10 N.Y.3d 417, 426–27 (2008). To prove that Hazare committed first-degree assault, the People were required to prove that Hazare caused Shiva – the deceased passenger from the Second Collision – serious physical injury while he was in the immediate flight from the First Collision. *See* N.Y. Penal Law § 120.10(4); *see also People v. Donovan,* 53 A.D.2d 27, 33 (3rd Dep't 1976) (noting that "there is no exact minute on the clock or milepost along the escape route" that terminates a crime).

The New York Court of Appeals described several factors that may be considered in determining whether a killing occurred in the immediate flight from a felony, stating that "[t]he jury *should be* instructed to give consideration to whether the homicide and the felony occurred at the same location or, if not, to the distance separating the two locations. Weight may also be placed on whether there is an interval of time between the commission of the felony and the

commission of the homicide. The jury *may* properly consider such *additional* factors as whether the culprits had possession of the fruits of criminal activity, whether the police, watchmen or concerned citizens were in close pursuit, and whether the criminals had reached a place of temporary safety." *Gladman*, 41 N.Y.2d 123, 129 (1992) (emphasis added). The court makes clear that the factors listed are not exclusive and other factors may be appropriate in differing factual settings. *Id.* at 129 (finding that "[n]o single factor is necessarily controlling"). Thus, the trial court properly omitted the two factors that did not apply to the facts of the case – police pursuit and possession of criminal proceeds – and Hazare's claim to the contrary is rejected.

Likewise, Hazare's claim that the "jury's consideration of this [police pursuit] factor would very likely have affected the verdict" (Habeas Pet. at 11) is without merit and ignores the other factors supporting a finding of immediate flight – close spatial and temporal proximity between the two crimes. The two collisions occurred just eight to ten blocks from each other and less than five minutes apart. (Resp.'s Aff. in Opp'n ¶¶ 3, 14.) Five minutes is a very short period of time, and ten blocks is a very short distance, especially considering that longer time periods and distances between an underlying felony and a subsequent killing have been held to be part of a defendant's immediate flight when viewed in conjunction with other factors. *See Gladman*, 41 N.Y.2d at 129 (less than 15 minutes and one-half mile); *Slaughter*, 78 N.Y.2d at 491 (15 to 20 minutes and one and one-half to two miles); *People v. McCord*, 160 A.D.2d 736, 738 (2d Dep't 1990) (13–15 minutes and one and one-half to two miles); *Donovan*, 53 A.D.2d at 33 (45 minutes and 38 miles). Similarly, police pursuit is not a necessary element, and its absence does not preclude a finding of immediate flight. *See Gladman,* 41 N.Y.2d at 129.

Finally, Hazare has not made a showing of a fundamental miscarriage of justice because he has failed to put forward any new evidence suggesting that he is innocent of the underlying

crimes. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence."). For the foregoing reasons, Hazare's Jury Instruction Claim is denied.

      c.   The Ineffective Assistance Jury Charge Claim is Meritless

Hazare raised a claim of ineffective assistance of counsel with respect to the Jury Instruction Claim on direct appeal. The Appellate Division denied the appeal, but did not explicitly address the ineffective assistance of counsel claim. Even assuming arguendo that the Appellate Division did not reach the merits of this claim,[13] Hazare's claim fails.

The test for ineffective assistance of counsel requires Hazare to prove: (i) that counsel's performance fell below an objective standard of reasonableness such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (ii) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This second step requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 391. As discussed in detail in Section II(b), *supra*, it is not clear to this Court that the jury instruction was improper and as such, failure to object to the instruction cannot be said to fall below an objective standard of reasonableness. Moreover, and as discussed in Section II(b), *supra*, it is highly unlikely, and clearly not a reasonable probability, that the jury instruction would have led to a different result in the trial court proceedings. Thus, Hazare's Ineffective Assistance Jury Charge Claim is denied.

## III.    Hazare's Unexhausted Claims Are Meritless.

---

[13] Generally, when a state court denies relief, it may be presumed that it has adjudicated the claim on the merits, absent an indication otherwise. Thus by declining to reverse Hazare's conviction, the Appellate Division presumptively rejected Hazare's ineffective assistance claim. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). However, for purposes of this petition, the Court will address Hazare's argument as if the Appellate Court has not reached a decision on the merits. The outcome of the Court's analysis is not changed by this assumption.

Hazare asserts two claims in his petition that are unexhausted. First he argues that his constitutional rights were violated by an 884-day pre-indictment delay ("Speedy Trial Claim"). (Habeas Pet. at 13–14.) Second, Hazare argues that he was denied his right to effective assistance of counsel because his trial counsel failed to preserve his speedy trial claim ("Ineffective Assistance Speedy Trial Claim"). (*Id.* at 16–17.) Federal courts only grant a stay of habeas proceedings to allow a petitioner to exhaust unexhausted claims in the limited circumstance where the petitioner demonstrates good cause for his or her failure to exhaust the claims first in state court, and where the claims are not plainly meritless. *Rhines*, 544 U.S. at 277. As discussed in detail in this Court's March 31, 2016 Memorandum and Order, neither of these claims warrants a stay of the proceedings.

    a.   <u>Hazare's Speedy Trial Claim is Procedurally Defaulted.</u>

For the reasons set forth in detail in the Court's March 31, 2016 Order, Hazare's Speedy Trial Claim is deemed exhausted, but procedurally barred, and is therefore unreviewable by this Court. *See Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) ("[I]f state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal . . . the petitioner procedurally defaulted those claims [and] the prisoner generally is barred from asserting those claims in a federal habeas proceeding); *see also Newborn v. Smith*, No. 09-CV-4844 (SJF), 2013 WL 504391, at *5 (E.D.N.Y. Feb. 7, 2013) ([W]hen the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally barred." (internal citation and quotation marks omitted)).

Hazare's Speedy Trial Claim is unexhausted because Hazare failed to raise the issue at trial or on appeal. Because it is an on-the-record claim that Hazare could have raised before the trial court or on direct appeal, Hazare no longer has a remedy available to him in state court. When "a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citing *Coleman*, 501 U.S. at 735 n.1 (internal quotation omitted)). Federal courts have "applied New York's procedural default rules in the first instance, pursuant to the exhaustion requirement for federal habeas." *Clark*, 510 F.3d at 390 (citations omitted). Although Hazare has raised this issue before the trial court on his motion to vacate judgment pursuant to Criminal Procedure Law § 440.10, the state court must ultimately find that the claim is procedurally barred. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (a state court *must* deny a motion to vacate judgment when, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."); *see also People v. Garcia*, 33 A.D.3d 1050, 1051 (3d Dep't 2006) (finding that to preserve a speedy trial claim, a defendant must make a motion to dismiss the indictment on speedy trial grounds prior to trial).

Where, as here, a petitioner no longer has a forum in state court in which to present an unexhausted claim, the Court should deem the claim technically exhausted, but procedurally barred from federal habeas review. *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989) (plurality

opinion); *see also Ramirez v. Attorney Gen.*, 280 F.3d 87, 94 (2d Cir. 2001) (a claim will be "deemed exhausted if it is . . . procedurally barred under state law" based on petitioner's failure to present the claim to the highest state court or preserve the claim in lower state courts). Hazare may only overcome this procedural bar by showing both cause and prejudice for the procedural default or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. He has made neither showing here.

Trial counsel's failure to timely raise the Speedy Trial Claim cannot constitute cause here. Where counsel's failure to raise a claim results in default, it can only constitute cause if it rises to the level of ineffective assistance of counsel. *Coleman*, 501 U.S. at 750. However, Hazare cannot support a claim for ineffective assistance of counsel based on trial counsel's failure to raise the Speedy Trial Claim because, as discussed in Section III(b), *infra*, that claim too is procedurally barred. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (ineffective assistance of counsel claims must be exhausted like any other constitutional claim, even if raised only to establish "cause"). Hazare also fails to demonstrate a fundamental miscarriage of justice. (*See* Section II(b)(ii), *supra*.) Thus, Hazare's Speedy Trial Claim is deemed exhausted, but procedurally barred, and is therefore unreviewable by this Court. *See Woodford*, 548 U.S. at 92–93; *see also Newborn*, 2013 WL 504391, at *5.

      b.   Hazare's Ineffective Assistance Speedy Trial Claim is Rejected.

Hazare claims that he was denied a speedy trial because "the attorney who represented [him] throughout the pre-indictment delay, [] did not advise [him] that the 884-day delay was a violation of defendant's constitutional rights." (Habeas Pet. at 17.) Hazare further alleges that counsel's negligence "was the reason this issue was never brought up at the trial level of the proceedings." (*Id.*) This is an on-the-record claim that Hazare should have raised on direct

appeal. However, Hazare failed to do so and has not alleged cause for his failure to present this argument on direct appeal. Thus, any state-court motion to vacate based on such claim pursuant to Criminal Procedure Law § 440.10 would be procedurally barred. *See* Crim. Proc. Law § 440.10(2)(c). As discussed in greater detail in Section II(b), *supra*, because Hazare no longer has a forum in state court in which to present his unexhausted claim, the Court should deem the claim technically exhausted, but procedurally barred from federal habeas review. *See Teague*, 489 U.S. at 297–99; *see also Ramirez*, 280 F.3d at 94. Hazare may only overcome this procedural bar by showing both cause and prejudice for the procedural default or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. He has done neither.

Hazare has not alleged any cause for his failure to present this aspect of his ineffective assistance of trial counsel claim to the state court. *See, e.g.*, *Linnen v. Poole*, No. 05-CV-6484 (VEB), 2011 WL 474146, at *7 (W.D.N.Y. Feb. 4, 2011) (finding that petitioner failed to establish "good cause" for failing to exhaust his ineffective assistance of appellate counsel claims sooner where all of the alleged errors were known to petitioner before he filed his habeas petition). Nor has Hazare demonstrated a fundamental miscarriage of justice. (*See* Section II(b)(ii), *supra*.) In short, Hazare pursued and completed the process of direct appeal under New York law, but failed to raise the Ineffective Assistance Speedy Trial Claim on his direct appeal. As such, the claim is procedurally defaulted and cannot be reviewed by this Court. *See Woodford*, 548 U.S. at 92–93; *see also Newborn*, 2013 WL 504391, at *5.

## CONCLUSION

For the foregoing reasons, Hazare's petition for a writ of habeas corpus is DISMISSED. (Doc. No. 1.) As Hazare has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253; *Soto v.*

*United States*, 185 F.3d 48, 51 (2d Cir. 1999).  Moreover, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order and the accompanying judgment to petitioner *pro se*, and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
      August 11, 2016

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge